### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

CAPITOL ENVIRONMENTAL )
SERVICES, INC., )
    Plaintiff, )
         )
     v. )   Case No. 1:10cv792
         )
NORTH RIVER INSURANCE )
COMPANY, )
    Defendant. )



## MEMORANDUM OPINION

This diversity dispute between a policyholder and an insurer presents the question

on cross motions for summary judgment whether an insurer must indemnify a

policyholder for a covered claim made against the policyholder in an underlying case

where, as here, the covered claim was dismissed as moot in the underlying case and there

is no apparent likelihood that the claimant can or will attempt to pursue the dismissed

clam against the policyholder. Put more succinctly, the question is whether the

policyholder must indemnify a policyholder for a covered claim where, as here, the

policyholder suffered no injury or damage attributable to the covered claim.

### I.

Plaintiff Capitol Environmental Services, Inc. ("Capitol") is a Virginia

corporation engaged in waste management. Defendant North River Insurance Company

("North River"), a company engaged in the insurance business, issued Capitol a general

liability insurance policy (the "Policy"). Capitol's complaint alleges that North River

breached its duty to indemnify Capitol under the insurance policy with respect to a third

party complaint filed in Florida state court. This is the second suit between these parties.

The first suit concluded with the issuance of a declaratory judgment that North River had a duty to defend Capitol in connection with the third party complaint filed in a Florida state court. *See Capitol Envtl. Servs, Inc. v. N. River Ins. Co.*, 536 F. Supp. 2d 633 (E.D. Va. 2008) (Memorandum Opinion) ("*Capitol I*") (resolving cross motions on summary judgment in the 2007 action). Capitol now brings this second suit against North River following the conclusion of the Florida case. A more complete and chronological recitation of the facts aids in the resolution of the pending cross motions on summary judgment.

In 2002, Annette Carey, a Florida resident, was injured when her automobile collided with a tractor trailer operated by Capitol's subcontractor for waste disposal. The waste disposal project for which Capitol has been hired involved several layers of contractors: (i) St. Marks Refinery ("St. Marks"), the owner, contracted with Earth Tech, Inc. as its general contractor to dispose of waste from its refinery; (ii) Earth Tech subcontracted with Capitol to provide hazardous materials transportation and disposal; and (iii) Capitol, in turn, subcontracted with Freehold Cartage, Inc. ("FCI") to transport the waste.

Just before dawn on September 25, 2002, FCI employee Peter Blash, operating a tractor trailer, arrived at the entrance to St. Marks, located on Florida Highway 363, to collect and transport waste from the site. Blash, acting within the scope of his FCI employment, attempted to back his empty tractor-trailer from the highway into the refinery with the aid of two Earth Tech "flag men," who directed traffic on the highway while Blash's tractor-trailer blocked both highway lanes. Notwithstanding these precautions, Carey, driving her automobile, collided with Blash's trailer and was injured.

Carey and her husband filed suit against Blash, FCI, and Earth Tech for Carey's injuries and her husband's loss of consortium (the "Florida action").[1] The Careys alleged that Earth Tech "negligently undertook to direct traffic on State Road 363" and failed to provide "adequate visual warning devices" to prevent the accident. Carey Compl. ¶¶ 13, 17. The Carey complaint also stated that Blash was "an employee of Freehold Cartage, Inc. and/or Earth Tech, Inc." who was "acting within the scope of his employment with Freehold and/or Earth Tech at all times." *Id.* at ¶¶ 5, 21. Hence, the Careys sued Earth Tech both for its own negligence and for the negligent acts of Blash, believing, mistakenly as it turned out, that Blash may have been an Earth Tech employee. Although Capitol was not named as a defendant in the Florida action, Earth Tech brought a third-party complaint against Capitol in August 2005 ("Third Party Complaint"), alleging, *inter alia,* that Capitol breached its subcontract with Earth Tech ("the Subcontract"): (i) by failing to purchase adequate insurance to protect both Capitol and Earth Tech from liability with respect to the waste disposal project; and (ii) by failing to indemnify Earth Tech for liability in the Florida action as the Subcontract required.[2] The second claim—the breach of contractual indemnity claim—stemmed from a clause in § 8.2 of the

---

[1] The Florida action was filed in the Second Judicial Circuit in and for Wakulla County, Florida. *See Carey v. Blash,* No. 03-136-CA (Fla. Cir. Ct.).

[2] Earth Tech's second amended third party complaint against Capitol alleged (i) breach of contract by failing to procure insurance for Earth Tech, (ii) negligent misrepresentation, (iii) fraudulent misrepresentation, (iv) breach of contractual indemnity, and (v) common law indemnity. In its breach of contract claim, Earth Tech specifically alleged that Capitol failed "to defend, indemnify, and hold harmless Earth Tech in the Carey Lawsuit, wherein [the Careys] allege Earth Tech is vicariously liable for the acts of Defendant Blash, an employee of Subtier Contractor Freehold Cartage." Third-Party Complaint ¶ 23. Capitol was subsequently granted partial summary judgment on April 25, 2007, with respect to the negligent misrepresentation, fraudulent misrepresentation, and common law indemnity claims, leaving only the two breach of contract claims.

Subcontract, which obligated Capitol to indemnify Earth Tech with respect to the "acts, error, or omissions" of Capitol or Capitol's subcontractors, which would include FCI and FCI employee Blash.[3] Accordingly, Earth Tech alleged that Capitol had a duty to indemnify Earth Tech for any losses incurred in the Florida action because, in Earth Tech's view, the losses at issue stemmed from the acts, errors, or omissions of Capitol and its subcontractors.

In 2007, while the Florida action was pending, Capitol brought a declaratory judgment action against North River in this forum alleging that North River had a duty under the Policy to defend and indemnify Capitol with respect to the third party complaint filed by Earth Tech. *Capitol I*, 536 F. Supp. 2d at 635. Specifically, Capitol sought (i) a declaratory judgment that North River had a duty to defend and to indemnify, (ii) monetary relief, and (iii) attorney's fees based on bad faith denial of coverage. *Capitol I*, 536 F. Supp. 2d at 635.

*Capitol I* resolved Capitol's and North River's cross motions for summary judgment. As to the duty to defend claim, *Capitol I* resolved the issue based on Virginia's well established Eight Corners Rule, which requires a court to compare the four corners of the insurance policy against the four corners of the underlying complaint;

---

[3] The pertinent language from the subcontract states as follows:

> 8.2: Indemnification: [Capitol] shall defend, indemnify, and hold harmless [Earth Tech], and its agents, officers, directors and employees against any and all claims, liability, losses, costs or expenses, including attorney's fees, arising out of the acts, errors or omissions of [Capitol], by its officers, agents, employees, Sub-tier Subcontractors, and anyone directly or indirectly employed by any of them for anyone for whose acts any of them may be liable. This indemnification obligation shall not be limited in any way by required, actual, or available insurance coverage.

if any allegations may potentially be covered by the policy, the insurer has a duty to defend. *See America Online, Inc. v. St. Paul Mercury Ins.* Co., 207 F. Supp. 2d 459, 465 (E.D. Va. 2002). Importantly, the Policy issued to Capitol obligated North River to "pay those sums that [Capitol] becomes *legally obligated* to pay as damages because of 'bodily injury' or 'property damage'" that were "caused by an 'occurrence' that takes place in the 'coverage territory.'" *Id.* at 637 (emphasis added). Also pertinent here, the Policy included coverage for liability incurred by Capitol under an "insured contract," which was defined as a "part of any other contract or agreement pertaining to your business . . . under which you [Capitol] assume the tort liability of another party to pay for 'bodily injury' or 'property damage' to a third person or organization." *Id.* at 641.[4] Because Capitol, in its Subcontract with Earth Tech, assumed the tort liability of another party (*i.e.*, Capitol's subcontractor, FCI) to pay for bodily injury to a third person (*i.e.*, the Careys), the four corners of the Third Party Complaint fit well within the four corners of the Policy. *Id.* Thus, North River had a duty to defend Capitol in connection with Earth Tech's Third Party Complaint against Capitol. Although Earth Tech's breach of contract claim against Capitol for failing to obtain insurance coverage for Earth Tech was not covered by the Policy, the duty of North River to defend one claim created a duty to

---

[4] To elaborate, Capitol's policy with North River excluded from coverage any "'[b]odily injury' or 'property damage' for which the insured *is obligated* to pay as damages by reason of the assumption of liability in a contract or agreement," which would ordinarily exclude coverage for Capitol's assumption of Earth Tech's liability. *Id.* (emphasis added). But this exclusion was subject to an exception; the bar to coverage did not apply to liability Capitol "[a]ssumed in a contract or agreement that is an 'insured contract.'" *See* 536 F. Supp. 2d at 536 n.9. Accordingly, the Policy obligated North River to defend and indemnify Capitol with respect to liability Capitol assumed in the subcontract with Earth Tech.

defend all claims in the third party complaint. *See Am. Online, Inc. v. St. Paul Mercury Ins. Co.*, 207 F. Supp. 2d 459, 465-66 (E.D. Va. 2002).

Unlike the duty to defend, which required comparing the allegations to the insurance policy, resolution of the duty to indemnify claim required examining whether the established or litigated facts fit within policy coverage. *See Perdue Farms, Inc. v. Travelers Cas. & Sur. Co. of Am.*, 448 F.3d 252, 258 (4th Cir. 2006) (applying Maryland law). Accordingly, *Capitol I* held that "the current factual record is insufficiently developed to warrant summary judgment for either party" on the duty to indemnify claim. Although the duty to indemnify claim was deferred, *Capitol I* specifically noted that North River would have a duty to indemnify Capitol "only if" Capitol were liable to Earth Tech based on the breach of contractual indemnity claim against Capitol in the Third Party Complaint. *Capitol I*, 536 F. Supp. 2d at 645.

Following the issuance of *Capitol I*, Capitol and North River entered into a series stipulations concerning how best to proceed on Capitol's duty to indemnify claim. In particular, the parties stipulated that they would "request that the Circuit Court of Wakulla County consider and decide the contractual indemnification claim." They further stipulated that "the Florida Courts would be in a better position to decide the [contractual indemnification] issue and [resolution by the Florida courts] would be a more efficient use of judicial resources." The parties agreed to abide by the decision of the Florida courts, but the parties reserved the right to "request" further rulings by this Court if the decisions of the Florida courts did not resolve the matter.

*See* Parties' Joint Submission, *Capitol Envtl. Servs, Inc. v. N. River Ins. Co.*, No. 1:07cv788 (E.D. Va. Mar. 12, 2008), ECF No. 52.[5] Following these stipulations, an Order issued in *Capitol I* on April 9, 2008, dismissing without prejudice Capitol's duty to indemnify claim, noting that "a ruling on this issue depends on the outcome of the contractual indemnification claim pending against Capitol in the Florida litigation." *Capitol Envtl. Servs, Inc. v. N. River Ins. Co.*, No. 1:07cv788 (E.D. Va. Apr. 9, 2008) (Order). The Order further stated that "in the event the Florida court does not resolve the contractual indemnification issue, the parties may apply to this Court for a ruling on this issue." *Id.*

While *Capitol I* was being decided, the Florida court proceeded with respect to the two remaining claims on Earth Tech's Third Party Complaint against Capitol. In this

---

[5] In pertinent part, the parties stipulated as follows:

> 2. With respect to the appropriate manner to proceed on Capitol's claim for indemnification from North River, the parties agree that such claim must abide a ruling on Earth Tech contractual indemnification claim pending against Capitol in the Florida Action and, potentially, an appeal of that issue. The parties in this case of Capitol Environmental Services, Inc. v. North River Insurance Company intend to request that the Circuit Court of Wakulla County consider and decide the contractual indemnification claim. The Parties further agree that since the issue of contractual indemnification is already before the Florida Courts, the Florida Courts would be in a better position to decide the issue and would be a more efficient use of judicial resources.

> . . .

> 4. Based upon the parties' mutual agreement with respect to the resolution of Capitol's claim for indemnification under the North River Policy, North River and Capitol respectfully submit that no further action is necessary by this Court and that the March 28, 2008 hearing on the duty to indemnify should be vacated. In the event that the Florida court does not decide the issue of contractual indemnification, the parties request the right to apply to this Court for a ruling on this issue.

respect, the Florida court granted partial summary judgment in favor of Earth Tech and against Capitol with respect to liability on the breach of contract claim for failure to obtain insurance coverage, leaving only damages to be decided by a jury. The court also severed that claim from the breach of contractual indemnity claim. *See Capitol Envtl. Servs. v. Earth Tech, Inc.*, 25 So. 3d 593 (Fla. Dist. Ct. App. 1st Dist. 2009) (reviewing procedural history). On February 4, 2009, a jury trial commenced to resolve the damages component of the breach of contract claim for failure to obtain insurance coverage.[6] After a three-day trial, the jury returned a verdict in favor of Earth Tech in the amount of $630,399.74. Yet, rather than proceed next to determine whether Capitol was also liable on the breach of indemnity claim, the Florida court deemed that claim "moot" in light of the jury verdict.[7] This was so because, in the Florida court's view, the breach of indemnity claim was merely an alternative theory of recovery, meaning that when Earth Tech recovered fully on the breach of contract claim for the failure to obtain insurance coverage, no further recovery was available to Earth Tech. *Id.* Accordingly, the Florida court deemed it unnecessary to reach and decide the breach of indemnity claim, and in fact suggested that the claim should be resolved by Eastern District of Virginia to the extent it might be necessary to resolve any dispute between Capitol and North River. *Id.*[8]

---

[6] Although the jury trial concluded on February 6, 2008, prior to publication of the February 28, 2008 *Capitol I* Memorandum Opinion, the parties did not inform the Court of the verdict in the underlying case, and thus *Capitol I* does not reference that trial or verdict in its discussion of the facts.

[7] *See* Apr. 28, 2008 Hrg. Tr. at 39:11-24, *Carey v. Blash*, No. 03-136-CA (Fla. Cir. Ct. Apr. 28, 2008) (Capitol Statement of Undisputed Facts Ex. 11).

[8] Although the Florida circuit court issued no formal opinion, the parties provided an excerpt from the colloquy between counsel for Capitol and the circuit court judge relevant to this issue:

This decision was appealed to the First District Court of Appeal of Florida. *See Capitol Envtl. Servs. v. Earth Tech, Inc.*, 25 So. 3d 593 (Fla. Dist. Ct. App. 2009). On November 30, 2009, in a published opinion, the Florida appellate court "affirm[ed] the final judgment in all respects, except for the trial court's failure to award prejudgment interest on all of the damages awarded by the jury." Although the trial court's dismissal of the breach of indemnity claim as moot was properly included in the appeal, among other issues,[9] the Florida appellate court "found no error" in that decision and affirmed

---

> THE COURT: All right. Well, it just seems to me that we had a number of alternative theories that were named in this complaint for them to seek recovery on the contract, and one of them has gone forward, the rest of them are moot. And if there needs to be some sort of clarification, I'll be happy for Judge Ellis to make whatever determination. Now, if we still got one count here and it was their count, I don't see how the Plaintiff can proceed on another count after they've already covered on one alternative theory. So, whatever is required ex mero moto or whatever, then that count will be denied.
>
> MR. BAUROTH: All right. But my motion to get Count IV [the breach of contractual indemnity claim] resolved is then denied as moot?
>
> THE COURT: Yeah.

*Id.*

[9] The appellate court identified four issues raised by Capitol on appeal:

> 1) whether the trial court erred in denying its motion for summary judgment on Earth Tech's breach of contract claim; 2) whether the trial court erred in denying its motion for summary judgment on Earth Tech's contractual indemnity claim; 3) whether the trial court erred in refusing to set the indemnity claim for trial; and 4) whether the trial court erred in allowing the jury to award attorney's fees and costs incurred by Earth Tech in a related declaratory judgment action.

25 So. 3d at 594. Additionally, on cross-appeal, Earth Tech argued that the trial court erred by not awarding prejudgment interest on all of the damages awarded by the jury. *Id.* Only Capitol's fourth issue on appeal and Earth Tech's cross-appeal were discussed in the opinion; the remaining issues were affirmed without discussion. *Id.*

the trial court's dismissal "without discussion." *Id.* at 594. Although the Florida appellate court's reasoning with respect to the mootness issue is not clear, it appears that the court believed the dismissed claim could still be litigated in this jurisdiction for the purposes of determining North River's indemnification obligation.[10]

---

[10] In this regard, the parties have submitted a transcript excerpt reflecting the following colloquy between Capitol's counsel and Judge Wetherell, II, from oral argument on the appeal:

> JUDGE WETHERELL: Let's skip ahead to the contractual indemnity case. In - - in view of what has happened and assuming we were to affirm on the breach of contract [for failure to provide adequate insurance], you're still asking us to remand back to the trial court to have - - have a - - have a trial I guess?

> MR. D'LUGO: That is - - that is correct, Your Honor.

> JUDGE WETHERELL: Why - - why would the Florida courts need to be involved in this? Hasn't the federal court up in Virginia expressed a willingness to - - to deal with this issue since Virginia law can be applied and everything else?

> MR. D'LUGO: Indeed they have, Your Honor. The - - the Virginia court or the federal court in Virginia indicated that their determination of coverage with regard to the North River Insurance Company, [Capitol's] insurance carrier, would be dependent upon the Florida court's resolution or determination of the . . . contractual indemnity count. But they also indicated a willingness to look at that issue on their own in - - in the event that the Florida court were to refuse to - - to look at it or refuse to rule on it. So our request is, in fact, that this cause be remanded in the alternative, although obviously our - - our main request is that this - - the - - the summary judgment be reversed and this cause be remanded with instructions to enter summary judgment in favor of [Capitol].

> JUDGE WETHERELL: I guess my question is more, as - - as a matter of policy, why would we have our circuit court down in Wakulla County hearing this case, which essentially is moot? And if we were to affirm on the breach of contract case, there's no further relief the circuit court could grant Earth Tech, why - - why wouldn't we just as a matter of comity, policy, whatever you would call it, let the district court up in Virginia deal with this issue, particularly since I guess it would be decided under

No further appeal was taken by Capitol based on the appellate court's ruling. On February 3, 2010, the remand from the Florida appellate court was received by the circuit court, and accordingly, the circuit court ordered the parties to submit an amended final order reflecting the appellate court's ruling to include prejudgment interest. Rather than submit an amended final order, on August 24, 2010, Earth Tech and Capitol entered into a settlement agreement whereby Earth Tech agreed to accept a lesser amount of damages, $769,087.68, on a payment schedule agreed upon by both parties. The last payment from Capitol to Earth Tech on this settlement agreement was due on December 31, 2010. Capitol and North River agree that the Florida appellate court's decision affirming the dismissal of the breach of indemnity claim as moot became final without further possibility of appeal prior to the settlement between Earth Tech and Capitol. Indeed, at the time of the settlement, the litigation between Earth Tech and Capitol had become final and nonappealable in every respect except for the circuit court's adjustment of the damages award based on prejudgment interest pursuant to the appellate court's remand. No further claims by Earth Tech against Capitol with regard to the incident involving the Careys are pending or expected.

## II.

As is typical in diversity actions, the threshold question is the choice of law. Because this is a diversity action, it is axiomatic that questions of state law are governed by the forum state's law, including the forum's choice-of-law rules. *See Klaxon Co. v.*

---

Virginia law, since it's a coverage contract between [Capitol] and some insurance company.

*See* Oral Arg. Tr. at 15:18-24, Case No. 1D08-3016 (Fla. Dist. Ct. App. Oct. 20, 2009) (Capitol Statement of Undisputed Facts Ex. 12). Judge Wetherell subsequently authored the appellate court's opinion.

*Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). In an insurance contract dispute,

Virginia's choice-of-law rules dictate that "generally, the law of the place where [the]

contract is written and delivered controls issues as to its coverage." *Buchanan v. Doe*,

431 S.E.2d 289, 291 (Va. 1993). Here, there is no dispute that the insurance policy was

delivered in Virginia and hence Virginia law governs interpretation of the policy.

## III.

The parties agree their dispute is appropriately resolved on summary judgment

because "there is no genuine issue as to any material fact." Rule 56(c), Fed. R. Civ. P.

Rather, the dispute here turns entirely on whether the uncontested facts entitle either party

to judgment as a matter of law. The summary judgment standard is too well settled to

require elaboration here. In essence, summary judgment is appropriate under Rule 56,

Fed. R. Civ. P., only where, on the basis of undisputed material facts, the moving party is

entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322

(1986). Importantly, to defeat summary judgment, the non-moving party may not rest

upon a "mere scintilla" of evidence, but must set forth specific facts showing a genuine

issue for trial. *Id.* at 324; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

Thus, the party with the burden of proof on an issue cannot prevail at summary judgment

on that issue unless that party adduces evidence that would be sufficient, if believed, to

carry the burden of proof on that issue at trial. *See Celotex*, 477 U.S. at 322.

## IV.

Analysis of the cross motions for summary judgment properly begins with a clear

statement of the central claim in issue, namely Capitol's breach of contract claim. In

essence, Capitol contends that North River breached the Policy terms by failing to

indemnify Capitol for the damages Capitol paid to Earth Tech in the Florida case. North

River argues that the dispositive obstacle to Capitol's breach of the Policy claim is that Capitol has not suffered any loss or damage attributable to a claim covered by the Policy, and it is axiomatic that an insurer is "only required to indemnify covered claims for which liability is incurred." *See Perdue*, 448 F.3d at 258.[11] Moreover, the Policy itself clearly states that North River will only pay those sums that Capitol becomes "legally obligated" to pay. According to North River, Capitol has not become "legally obligated" for a covered claim because the judgment awarding damages against Capitol in the Florida action was attributed not to the alleged breach of contractual indemnity—a covered claim—but to the breach of contract claim for failing to insure Earth Tech—an uncovered claim. The covered claim against Capitol was dismissed as moot, and this dismissal was affirmed on appeal. The parties ultimately settled their claims after the exhaustion of appeals, but if the Florida court's dismissal of the covered claim on mootness grounds is subject to *res judicata*—that is, if the Florida court's dismissal barred Earth Tech from reasserting its breach of contractual indemnity claim against Capitol—then none of the money that Capitol paid Earth Tech in the settlement can be said to have been paid on the covered claim. Thus, if the Florida court's dismissal of the covered claim on mootness grounds effectively foreclosed the possibility of Capitol ever becoming liable to Earth Tech on that covered claim, then Capitol's claim here would have to be dismissed. On the other hand, if Earth Tech could have reasserted the covered

---

[11] Although the Fourth Circuit in *Perdue* applied Maryland law, there is no doubt that this same principle also applies in Virginia and elsewhere. *See also Outboard Marine Corp. v. Liberty Mut. Ins. Co.*, 154 Ill. 2d 90, 127 (1992) (recognizing under Illinois law that the duty to indemnify is triggered only when liability is actually incurred by the policyholder); *Amoco Oil Co. v. Liberty Auto & Elec. Co.*, 262 Conn. 142, 150 (2002) (same under Connecticut law); *Sunset-Sternau Food Co. v. Bonzi*, 60 Cal. 2d 834, 843 (1964) (same under California law).

claim against Capitol and reduced the claim to judgment, then Capitol could attempt to show in this forum that all or some of the monies paid on settlement following the judgment are attributable to the covered claim, and it would then be necessary to adjudicate here (i) whether there was a breach of the indemnity clause in Earth Tech's subcontract with Capitol and (ii) how much—if not all—of the money Capitol paid Earth Tech can be attributed to that covered claim. Accordingly, the central, dispositive question focuses sharply on the nature and effect of the Florida court's dismissal of the covered claim as moot.

It is true that the Florida courts did not reach or address whether Capitol in fact breached the contractual indemnity clause as Earth Tech had alleged, but rather ruled that even if such a breach occurred, Earth Tech could recover no further damages from Capitol given Earth Tech's losses were fully satisfied by the damages awarded on the claim for breach of contract for failing to provide Earth Tech insurance. But this fact, by itself, does not answer the question whether the dismissal of the contractual indemnity claim as moot extinguished that claim under Florida law. Instead, analysis of this question must begin with Rule 1.420(b) of the Florida Rules of Civil Procedure. Under Rule 1.420(b), any involuntary dismissal "other than a dismissal for lack of jurisdiction or for improper venue or for lack of an indispensable party, operates as an *adjudication on the merits*." *Id.* (emphasis added). And under Florida law, when a dismissal constitutes an "adjudication on the merits," subsequent action on the same subject matter is barred by *res judicata*. *See Allie v. Ionata*, 503 So. 2d 1237, 1242 (Fla. 1987) (Rule 1.420(b) dismissal on statute of limitations grounds was "an adjudication[] on the merits for *res judicata* purposes"); *see also Hassenteufel v. Howard Johnson, Inc.*, 52 So. 2d

14

810, 812 (Fla. 1951) (holding generally that an adjudication on the merits is subject to *res judicata*). These principles of Florida law are applicable here because the dismissal of Earth Tech's claim against Capitol for breach of contractual indemnity on mootness grounds was plainly an "involuntary dismissal," subject to Rule 1.420.

To be sure, Rule 1.420 includes three explicit exceptions, none of which is applicable here.. The first two exceptions—dismissals based on improper venue and lack of an indispensable party—are plainly inapplicable. The exception for jurisdictional dismissals requires more scrutiny. Athough a federal court's dismissal of a case as moot is generally understood to be jurisdictional,[12] the same principle does not apply under Florida law. Rather, Florida law embraces a different view of mootness as based on policy rather than jurisdiction. Although the issue has not often arisen, at least one Florida appellate court has squarely observed that "[t]he reluctance of the Florida courts to decide moot questions is based on policy reasons, not lack of jurisdiction." *Merkle v. Jacoby*, 912 So. 2d 593, 594 (Fla. Dist. Ct. App. 2d Dist. 2005) (citing *Cook v. City of Jacksonville*, 823 So. 2d 86 (Fla. 2002)). The *Merkle* case drew its authority from the well established Florida precedent that cases that are moot may nonetheless be decided if one of three policy exceptions applies—namely, (i) when questions raised are of great public importance, (ii) when the questions raised are likely to recur, or (iii) when collateral legal consequences that affect the rights of a party flow from the issue to be determined. *See Godwin v. State*, 593 So. 2d 211, 212 (Fla. 1992). Given that the explicit exceptions to the rule barring review of moot claims are policy-based, it follows,

---

[12] This is so because federal courts "lack jurisdiction to decide moot cases because their constitutional authority extends only to actual cases or controversies," *Iron Arrow Honor Soc. v. Heckler*, 464 U.S. 67 (1983).

as the *Merkle* court concluded, that the rule itself is policy-based, not jurisdictional. Accordingly, it is appropriate to follows *Merkle* and concluded that the dismissal of the covered claim on mootness grounds was not jurisdictional in nature. 912 So. 2d at 594. As such, none of the exceptions in Rule 1.420 applies,[13] and Rule 1.420 renders the dismissal on mootness grounds an adjudication on the merits. Accordingly, under Florida law, the dismissal of the covered claim on mootness grounds is *res judicata*. *See Allie*, 503 So. 2d at 1242 (Rule 1.420(b) dismissal on statute of limitations grounds was "an adjudication[] on the merits for res judicata purposes"); *see also Hassenteufel*, 52 So. 2d at 812 (holding generally that an adjudication on the merits is subject to *res judicata*).

This result is, as North River argued, a critical impediment to Capitol's indemnification claim against North River. Because Earth Tech did not win any damages against Capitol based on the covered claim, and because Earth Tech is barred by *res judicata* from reasserting the covered claim by virtue of its dismissal on mootness grounds, Capitol never became "legally obligated" to pay Earth Tech for an occurrence covered by the Policy. Even the settlement, which purported to settle all claims between Earth Tech and Capitol, cannot be said to have encompassed the breach of contractual indemnity claim because, at the time the settlement was consummated, that covered claim

---

[13] In addition to the exceptions explicitly noted in Rule 1.420(b), Florida courts have recognized some additional narrow exceptions. But the parties have identified no Florida case—and none has been found—recognizing mootness as an exception. Apart from the explicit exceptions contained in Rule 1.420(b), the Florida courts have recognized three exceptions to the rule that an involuntary dismissal constitutes an adjudication on the merits, holding that the dismissal is not on the merits where it stems from (i) improper joinder of an insurer, (ii) failure to prosecute, and (iii) failure to serve a defendant within 120 days. *Id.* The rule can also be relaxed by a specific statutory exception, if one exists. *North Shore Realty Corp. v. Gallaher*, 99 So. 2d 255, 256 (Fla. Dist. Ct. App. 3d Dist. 1957). In sum, the clear import of the case law in Florida is that an involuntary dismissal of a claim is an adjudication on the merits may be overridden only where the exception is grounded in existing case law, statute, or the language of Rule 1.420(b) itself.

was already extinguished and thus subject to *res judicata.* .Accordingly, because Capitol has suffered, and will suffer, no loss or damage covered by the Policy, there is no basis under the Policy for Capitol to seek indemnification from North River.

It is worth noting that even if the dismissal of the covered claim on mootness grounds were found to be a jurisdictional dismissal, or otherwise deemed not to be an adjudication on the merits, the end result for Capitol in this action is the same. Although it is often stated as "black-letter law . . . that only a 'judgment on the merits' has res judicata effect," that proposition must be understood as a "valid generalization rather than as literal truth." *Okoro v. Bohman*, 164 F.3d 1059, 1062 (7th Cir. 1999). A critical though rarely-invoked exception to this general rule is that even a judgment not on the merits will generally have preclusive effect at least as to the same issue for which dismissal was ordered. *Id.* That is, if a case is dismissed for lack of jurisdiction, "that jurisdictional dismissal is *res judicata* on the jurisdictional issue" itself. *Id.*[14] Thus, the dismissal of a claim as moot precludes "the relitigation of the ground of that dismissal."[15] *Okoro*, 164 F.3d at 1063.

---

[14] *See also Ricketts v. Midwest National Bank*, 874 F.2d 1177, 1182 n. 4 (7th Cir. 1989); *Bromwell v. Michigan Mutual Ins. Co.*, 115 F.3d 208, 212-13 (3d Cir. 1997); *Niagara Mohawk Power Corp. v. Tonawanda Band of Seneca Indians*, 94 F.3d 747, 754 (2d Cir. 1996); *Equitable Trust Co. v. Commodity Futures Comm'n*, 669 F.2d 269, 272 (5th Cir. 1982).

[15] Of course, this rule does not prevent, for example, a plaintiff whose case is dismissed in federal court for lack of subject matter jurisdiction from bringing the complaint in state court. The filing in state court cures the jurisdictional defect. *See Okoro*, 164 F.3d at 1063. This is so because "the lack of federal jurisdiction [is] irrelevant to whether a suit can be maintained in a state court." *Id.* Additionally, other jurisdictional defects may arguably be cured by subsequent filings that remedy the basis for an earlier dismissal. *Id.* (noting that a dismissal for failing to pay the proper filing fee is not subject to preclusive effect when the plaintiff subsequently files the same complaint and pays the fee). But mootness is not a defect that can be remedied, where, as here, none of the circumstances

The Florida circuit court dismissed the covered claim because, in its view, the claim was moot in light of Earth Tech's full recovery on an alternative theory of liability. As such, the determination that Earth Tech's breach of contractual indemnity claim against Capitol was moot is subject to preclusive effect, even if one finds that the merits of Earth Tech's claim—namely, whether Capitol was actually liable to Earth Tech for its alleged breach of the subcontract indemnification clause—were not reached. As a result, even if Earth Tech and Capitol had not ultimately settled their claims, a subsequent action now by Earth Tech asserting its breach of indemnity claim against Capitol would be dismissed on mootness ground, and a court hearing such a case would be precluded from reexamining whether the mootness finding was proper. *See Okoro*, 164 F.3d at 1062; *see also* note 14, *supra* (collecting cases). Therefore, the dismissal of the covered claim on mootness grounds effectively foreclosed any possibility that Capitol will ever be legally obligated to pay Earth Tech damages based on the covered claim.

To be sure, the argument that the covered claim was not actually moot when it was dismissed has some force, particularly given that under Florida law, a claim need not be dismissed on mootness grounds where, *inter alia*, collateral legal consequences flow from the issues to be resolved that may affect the rights of a party. *Godwin v. State*, 593 So. 2d 211 (Fla. 1992); *Mazer v. Orange County*, 811 So. 2d 857, 859 (Fla. Dist. Ct. App. 2002). Indeed, Capitol had a duty pursuant to its stipulation with North River to explain to the Florida courts the nature of these collateral consequences, namely that dismissal of

---

that made the case "moot" in the view of the Florida circuit court have changed since the case's dismissal. For example, the Florida court was aware of the insurance dispute between Capitol and North River at the time it dismissed the covered claim. As such, any court hearing a subsequent action by Earth Tech against Capitol for breach of contractual indemnity—the covered claim—would be bound by the previous mootness determination and thus required to dismiss the case.

18

the covered claim would foreclose the possibility of indemnification from North River. *See* note 5, *supra*. But the dismissal of the covered claim as moot was affirmed by the Florida appellate court on November 30, 2009, and that judgment became final when no further appeal was taken.[16] *See Capitol*, 25 So. 3d 593. This judgment cannot be challenged or disturbed in this forum. Therefore, the only appropriate conclusion to be drawn from this procedural history is that Capitol has not suffered any loss or damage attributable to the covered claim, and given the dismissal of the claim on mootness grounds is subject to *res judicata*, Capitol could not suffer any loss or damage attributable to the covered claim in the future regardless of the parties' settlement. Accordingly, Capitol cannot establish one of the essential elements of its claims against North River, namely that it has suffered injury or damage from a covered claim. *See* n.11, *supra* (collecting cases). Hence, there is, on this record, no breach of the Policy by North River.

It is unfortunate that the dismissal of the claim as moot may have unintentionally foreclosed Capitol's ability to seek indemnification from North River, yet this result is compelled by Florida law. It must also be noted that *Capitol I* and the subsequent order dismissing the case without prejudice made pellucidly clear that the question whether Capitol was liable to Earth Tech on the breach of contractual indemnity claim should be resolved by the Florida court, where the Third Party Complaint was then pending. *Capitol I*, 536 F. Supp. 2d at 645; *Capitol Envtl. Servs, Inc. v. N. River Ins. Co.*, No. 1:07cv788 (E.D. Va. Apr. 9, 2008) (Order). It is understandable that in seeking relief in

---

[16] Indeed, both Capitol and North River correctly concede here that the dismissal of the contractual indemnity claim became final and nonappealable before Capitol and Earth Tech entered into their final settlement arrangement.

this jurisdiction, Capitol refers to the April 9, 2008 Order following *Capitol I*, which noted that "a ruling on [North River's duty to indemnify] depends on the outcome of the contractual indemnification claim pending against Capitol in the Florida litigation," and added that "in the event the Florida court does not resolve the contractual indemnification issue, the parties may apply to this Court for a ruling on this issue." *Capitol Envtl. Servs, Inc. v. N. River Ins. Co.*, No. 1:07cv788 (E.D. Va. Apr. 9, 2008) (Order). Yet, clearly nothing in the April 9, 2008 Order contemplated that the Florida courts could dismiss and thereby extinguish the covered claim, but still leave the covered claim open for resolution in this forum.[17] The pertinent language in the April 9, 2008 Order merely recognized that there are certain scenarios—such as a lump-sum settlement of Earth Tech's claims—that would have meant Capitol may have suffered loss or damages attributable to the covered claim, thereby requiring a determination in this forum as to Capitol's liability on the breach of contractual indemnity claim.[18] This is so because it is well settled that when a policyholder settles both "covered and non-covered claims" for a single lump sum, and "the settlement agreement does not fully indicate how liability was allocated between them," a court must engage in a factual inquiry to "apportion[]" the settlement amounts between the covered and non-covered claims. *Perdue Farms, Inc. v.*

---

[17] In effect, the Florida court did "resolve" the breach of indemnity claim, in accord with the March 12, 2008 Order, insofar as it dismissed the claim as moot. While its decision to dismiss the claim as moot appeared to be based in part on the erroneous belief that the claim could still be litigated in this jurisdiction, the effect of the dismissal is that Capitol faces no liability to Earth Tech on any basis covered by its insurance policy.

[18] Additionally, the insurer might dispute the reasonableness of the policyholder's settlement, which may also be a proper basis on which to challenge indemnification. *See Employers Mut. Liability Ins. Co. v. Hendrix*, 199 F.2d 53, 60 (4th Cir. 1952). In those circumstances, a court would similarly have to engage in a factual determination as to the merits of the underlying claim and the appropriate amount for indemnification. *Id.*

*Travelers Cas. & Sur. Co. of Am.*, 448 F.3d 252, 263 (4th Cir. 2006); *see also Bd. of County Supervisors v. Scottish & York Ins. Servs., Inc.*, 763 F.2d 176, 179 (4th Cir. 1985) ("apportionment is necessary in the . . . context of a general jury verdict that does not separate out liability between covered and non-covered claims"). In other words, if Capitol suffered an ambiguous loss—*i.e.*, if it paid Earth Tech damages based on a lump settlement or general damages verdict for covered and uncovered claims—a separate fact finding would be required to determine what amount of the loss, if any, is attributable to a covered occurrence. But that situation is not presented here. The settlement between Capitol and Earth Tech did not resolve both covered and uncovered claims; rather, Capitol's liability to Earth Tech stemmed unambiguously and exclusively from Capitol's failure to provide adequate insurance for Earth Tech, a claim not covered by the Policy. Furthermore, any damages paid under the settlement agreement cannot be attributed to the covered claim because the dismissal of the covered claim as moot was final, thereby extinguishing that claim before the settlement was reached. As discussed earlier, the dismissal of the covered claim on mootness grounds precludes Earth Tech from ever reasserting that claim against Capitol, and thus Capitol has not been, and will never be, legally obligated to pay Earth Tech damages based on the covered claim.

In sum, because the Policy, by its terms, only obligates North River to "pay those sums that [Capitol] becomes legally obligated to pay as damages" for a covered claim, and Capitol was never "legally obligated" to pay Earth Tech damages based on a covered claim, Capitol's claim for indemnification against North River fails. Therefore, North River must be granted summary judgment on Capitol's claims.

The Clerk is directed to send a copy of this Memorandum Opinion to all counsel

of record.

Alexandria, Virginia
March 15, 2011

T. S. Ellis, III
United States District Judge